Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, July 02, 2009 3:54:50 PM

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AB&C GROUP, INC. | ) | Case No. 08-bk-482 |
| | ) | |
| Debtor. | ) | Chapter 7 |

## MEMORANDUM OPINION

Robert W. Trumble, the Chapter 7 trustee (the "Trustee") for AB&C Group, Inc. (the "Debtor"), joins Branch Banking & Trust (the "Bank") in requesting this court to enter an order proposed by them (the "Proposed Order") which, among other things, authorizes the Trustee to take appropriate action to terminate the AB&C Group, Inc. 401(k) & Savings Plan (the "Plan"), and provides for a procedure for the payment from the Plan of the fees for services and expenses connected with its termination.

The United States Department of Labor (the "Department") does not object to the Proposed Order insofar as it authorizes the Trustee to terminate the Plan. Rather, the Department objects to those terms of the Proposed Order that require the court to pass upon the permissibility, under the provisions of the Employee Retirement Income and Security Act ("ERISA"), at 29 U.S.C. §§ 1001 *et seq.*, of the fees and expenses that the Plan will incur in conjunction with its termination. The Department asserts that this court lacks jurisdiction to do so. The Department also contends that the procedural terms of the Proposed Order offend other ERISA aspects, including its statute of limitations and prohibitions against exculpatory provisions.

1

For the reasons provided herein, the court will deny entry of the Proposed Order.

## I. BACKGROUND

The Plan is sponsored by the Debtor for the benefit of its employees and is a defined contribution plan governed by the terms of ERISA. Prior to the filing of the Debtor's bankruptcy case, the Plan was administered by the Debtor.[1] To assist it in its duties as plan administrator, the Debtor and the Bank executed an "Administrative Services Agreement" (the "Services Agreement"). Under the Services Agreement, the Bank is required to, *inter alia*, conduct tests and make reports required by ERISA and the Internal Revenue Code, follow the Debtor's direction in allocating contributions to employee accounts, and make distributions. The Bank's obligations under the Services Agreement are limited to what is expressly provided in the Agreement and the Debtor bears all other obligations in administering the Plan.

On March 14, 2008, without notice to its employees or creditors, the Debtor ceased operations, and the Debtor's principals abandoned the business. On April 4, 2008, a petition commencing an involuntary bankruptcy case under Chapter 7 was filed against the Debtor. An order for relief against the Debtor was entered on May 1, 2008 as a result of its failure to controvert the petition. The Trustee was appointed on an interim basis on April 24, 2008, and later, for the duration of the case, by designation, on June 5, 2008. In furtherance of the performance of his duties, and, specifically, to facilitate the wind-up of the Plan, the Trustee, in conjunction with the Bank, submitted the Proposed Order, which among other things, sets forth a two-step procedure for this court to follow in determining whether fees payable to the Bank for its administrative services are properly payable from the corpus of the Plan.

The first step allows the Bank to obtain approval to perform its services and obtain 75% of

---

[1]The Plan's governing documents include the "Defined Contribution Prototype Plan and Trust," "Adoption Agreement" and "Amendment to the AB&C Group, Inc. 401(k) & Savings Plan." According to those documents, there is no dispute as to whether the Debtor was a "plan administrator" as that term is defined under 29 U.S.C. § 1002(16)(A) –
(i) the person specifically so designated by the terms of the instrument under which the plan is operated;
(ii) if an administrator is not so designated, the plan sponsor; or
(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

2

its fee. In that regard, the Bank or Trustee must submit a prospective list of fees for services that the Bank intends to perform, and within fifteen days of filing the list, parties in interest may object. Absent an objection, the fees and services are deemed "prima facie" reasonable, compliant with any ERISA requirement, and properly payable from the Plan's assets. If a party objects, the court determines whether the fees and services are prima facie reasonable, compliant with ERISA, and properly payable from the Plan. After resolution of the objection, the Bank is authorized to perform services, but is not obligated to do so until it receives 75% of the allowed fee.

The second step provides a procedure for the Bank to obtain the remaining 25% of its fee. In that regard, it must submit a notice to parties in interest that the Plan has been terminated, and within fifteen days of filing the notice, parties in interest may request an investigation of the Bank's performance. A timely investigation request requires the Bank to submit to the bankruptcy court, under seal, copies of all documents generated in performance of its services. Thereafter, within 30 days of filing the documents under seal, an investigating party may file an objection to the Bank's performance, and the bankruptcy court then must determine whether the Bank's performance is proper. In the absence of any objection, the Bank's performance is complete, and the Bank's fees are fully payable from the Plan.

Although the Plan is excluded from the bankruptcy estate by 11 U.S.C. § 541(b)(7), the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") incorporated 11 U.S.C. § 704(a)(11) into the list of other bankruptcy trustee duties.[2] Section 704(a)(11) provides that "[t]he trustee shall . . . if at the time of the commencement of the case, the debtor (or any entity designated by the debtor) served as the administrator (as defined in section 3 of [ERISA]) of an employee benefit plan, continue to perform the obligations required of the administrator." Accordingly, § 704(a)(11) resolved the pre-BAPCPA uncertainty over whether a bankruptcy trustee succeeded the debtor as plan administrator. *Compare, In re C.F. Foods, L.P.*, No. 03-6361, 2004 U.S. Dist. LEXIS 19079 (E.D. Pa. Sept. 17, 2004) (holding that a trustee must perform the plan administrator duties of the debtor imposed by ERISA, because statutory obligations binding the

---

[2]Trustees appointed in cases under Chapter 11 bear the same plan administrator duties as Chapter 7 trustees. 11 U.S.C. § 1106(a)(1) ("A trustee shall–(1) perform the duties of a trustee as specified in paragraph[] . . . (11) . . . of section 704 . . . .").

3

debtor will subsequently bind the bankruptcy trustee), *and In re New Center Hosp'l*, 200 B.R. 592 (Bankr. E.D. Mich. 1996) (order granting motion to compel chapter 11 trustee to administer debtor's ERISA plan), *with Chambers v. Kaleidescope, Inc. Profit Sharing Plan and Trust*, 650 F. Supp. 359 (N.D. Ga. 1986) (holding that plan administrators of a corporate debtor must continue to perform plan administrator duties despite the appointment of a chapter 11 trustee); *see also* 6 *Collier on Bankruptcy* ¶ 704.15 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

However, the Bankruptcy Code provides no guidance to the Trustee in how to pay for the costs of administration generated by the performance of his plan administrator duties. The Bank and Trustee submitted the Proposed Order in an effort to provide for payment from the Plan under the auspices of the court.

## II. DISCUSSION

The Department argues that the court lacks subject matter jurisdiction to enter the Proposed Order. The Department asserts that ERISA, not title 11, supplies the law governing whether the Bank can be paid from the Plan. Also, it argues that the relief sought affects only non-estate assets; consequently, the Proposed Order purports to determine issues that have no relation to the bankruptcy estate.

Contrary to the Department's assertion that this court lacks subject matter jurisdiction to enter the Proposed Order, the Trustee and the Bank assert that it may be entered because the Trustee has a duty under § 704(a)(11) to administer the Plan, the Trustee must employ the Bank pursuant to § 327 to provide the professional skills necessary to administering the Plan, and the Trustee must assume the existing Services Agreement under § 365 to allow the Bank to continue its services. Thus they contend that the bankruptcy jurisdiction implicated in the Trustee's efforts to administer the Plan's termination provides a sufficient basis for the court to exert authority over the Plan and authorize payment for services from it.

In adjudicating the issues presented by the parties, the court will: (A) discuss the argument of the Trustee and the Bank that the court has "arising in" and "arising under" jurisdiction to enter the Proposed Order under §§ 327 and 365 of the Bankruptcy Code; and (B) determine whether entry of the Proposed Order is in any way "related to" the administration of this bankruptcy case.

**A. Bankruptcy Jurisdiction to Grant Relief Under §§ 327 and 365**

The Bank and Trustee argue that the Proposed Order is essential to the Trustee's assumption

4

of the Services Agreement and to employ the Bank to assist the Trustee in administering the Plan. Section 327 governs the employment of professionals and § 365 governs the assumption of executory contracts. The Bank and Trustee view the Proposed Order as co-extensive with the Trustee's exercise of his authority under §§ 327 and 365. Therefore, they assert that the Department has no basis to object to the bankruptcy court's subject matter jurisdiction over matters that "arise in" the bankruptcy case and "arise under" title 11.

By order of reference from the district courts, bankruptcy courts have subject matter jurisdiction over all cases under title 11 and all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) & (b), 157(a). However, once a bankruptcy court acquires jurisdiction over a bankruptcy case under § 1334, as delegated to it pursuant to § 157, a bankruptcy court's power to adjudicate a proceeding connected to the case is further refined depending on whether the proceeding is "core" or "non-core." 28 U.S.C. § 157(b)-(c). In "core" proceedings, which are limited to proceedings arising under title 11, or arising in a case under title 11, the bankruptcy court may enter final orders. In contrast, proceedings that are "non-core" pertain to proceedings that are more attenuated and merely related to a bankruptcy case. 28 U.S.C. § 157(c). Thus, absent consent, the bankruptcy court may hear non-core proceedings but must submit proposed findings of fact and conclusions of law to the district court for entry of final judgment. 28 U.S.C. § 157(c)(1). It is the bankruptcy court that determines, in the first instance, whether a proceeding is a "core" or "non-core." 28 U.S.C. § 157(b)(3).

However, "[t]he determination that a claim is core or noncore is one that should not be reached . . . if subject matter jurisdiction does not exist." *Valley Historic Ltd. P'ship v. The Bank of New York*, 486 F.3d 831, 839 n.3 (4th Cir. 2007). Beyond the bankruptcy case itself, bankruptcy jurisdiction extends to proceedings that "arise under" title 11 or "arise in" a case under title 11. The two categories are "meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to [final determination by a bankruptcy court]." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987). A proceeding "arises under" title 11 where either bankruptcy law creates the relief sought or the right to relief necessarily depends on resolution of a substantial question of bankruptcy law. *Poplar Run Five Ltd. P'ship v. Virginia Elec. & Power Co. (In re Poplar Run Five Ltd. P'ship)*, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)); *accord Dwyer v. First Nat'l*

5

*Bank (In re O'Brien)*, 2009 U.S. Dist. LEXIS 42835 at *10 (S.D.W. Va. May 19, 2009) ("[A] proceeding [arises under title 11 or arises in the bankruptcy case] . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). Proceedings "arise in" the bankruptcy case when the proceedings "are not based on any right expressly created by [t]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic Ltd. P'ship*, 486 F.3d at 835.

**1. Section 327**

Section 327 of the Bankruptcy Code requires a bankruptcy trustee to obtain court approval before employing a professional to assist in carrying out his duties under the Bankruptcy code. Title 11 creates the relief sought (an order granting the trustee's employment application), and, thus, employment applications by bankruptcy trustees typically arise in the bankruptcy case and arise under title 11.

Importantly, however, none of the parties disputes the court's bankruptcy jurisdiction to pass upon the Trustee's request for the employment of professionals under § 327, including the Trustee's employment of the Bank to assist in administering the Plan. The only dispute is over whether this court can authorize the payment of compensation for such services from the Plan, which itself is not a debtor and the corpus of which does not form part of the estate.

As explained in *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990), the fee application procedures of §§ 330 and 331 and Federal Rule of Bankruptcy Procedure 2016 require court approval of a fee application only where the professional's fee is proposed to be paid from the estate. "Nothing in the [fee application] provisions . . . authorizes a court to award compensation or reimbursement of expenses from a source other than the estate." 114 B.R. at 993; *see also David & Hagner v. DHP, Inc.*, 171 B.R. 429, 436-437 (D.D.C. 1994) (holding that the bankruptcy court has no authority to award compensation to a debtor's attorney from sources other than the estate).

Here, the Proposed Order creates a procedure that would have this court declare that the Bank's compensation is payable from the Plan, a non-estate asset. The court finds the reasoning set forth under the *David & Hagner* and *McDonald Brothers* cases to be persuasive and holds that § 327 provides no authority for this court to grant compensation to the Bank from the Plan. Thus, § 327 does not authorize the relief sought in the Proposed Order and does not provide a jurisdictional basis

premised upon "arising in" the bankruptcy case or "arising under" title 11.

### 2. Section 365

Like their argument regarding the employment of the Bank under § 327, the Trustee and the Bank argue that the Proposed Order is jurisdictionally sound based on the Trustee's intention to assume the Services Agreement existing between the Bank and the Debtor. They further argue that the Trustee cannot comply with the § 365(b)(1) requirement to cure extant defaults under the Services Agreement without an order from the court granting payment from Plan assets.

To be sure, in lieu of immediately curing the default, § 365(b)(1) provides that the Trustee may "provide[] adequate assurance that [he] will promptly cure, such default." 11 U.S.C. § 365(b)(1); *In re Martin Paint Stores*, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996) ("At a minimum, the primary focus of adequate assurance concerns the assignee's ability to fulfill the financial obligations under the [contract].").

To the extent that the Services Agreement would qualify as a contract that the Trustee must assume under § 365, the Trustee is free to assume it. At the same time, as administrator of the Plan, the Trustee is free to decide whether to promise Plan assets as adequate assurance to the Bank that any defaults in pre-assumption payments will be cured. In this case, such a promise by the Trustee would provide sufficient assurance for the court to approve the Trustee's assumption of the Services Agreement for § 365 purposes.

However, the court agrees with the Department that the terms of the Proposed Order are not tantamount to the assumption of an ordinary executory contract under § 365. As noted by the Department, the Services Agreement does not require the Bank to perform services in conjunction with the termination of the Plan. Moreover, the Services Agreement requires the Debtor to pay for services rendered by the Bank, not the Plan. Thus, a request by the Trustee to pay the Bank for services rendered in connection with terminating the Plan is not a request to assume the Services Agreement. Rather, it is a request for this court to approve the creation of a new agreement, or to assume and modify an existing agreement, which contains terms that are beyond this court's authority to approve under § 365.

This is so because, as the Department contends, even if the court were to assert jurisdiction over the assumption of the Services Agreement, the court would not also have the jurisdiction to modify the Agreement by adopting the procedures set forth in the Proposed Order for resolving

7

disputes regarding the permissibility under ERISA of the fees and expenses charged by the Bank. The resolution of disputes over the payment of administrative costs from Plan assets under ERISA is typically an issue that arises outside bankruptcy. It does not depend upon bankruptcy for its existence, nor does it involve an administrative matter that arises only in bankruptcy cases.

Therefore, regardless of the invocation of jurisdiction by the Trustee and the Bank based upon § 327 and/or § 365, the ultimate goal sought by them is an order under which the court would be obligated to rule upon the propriety of charges against the Plan – a determination that is governed by the terms of ERISA, not the Bankruptcy Code. Thus, a proceeding to determine the appropriateness of fees to be charged to the Plan does not "arise under" title 11 or "arise in" the bankruptcy case, because the determination requires no resolution of bankruptcy law and the determination frequently arises in non-bankruptcy cases. *E.g., Delgrosso v. Spang & Co.*, 776 F. Supp. 1065 (W.D. Pa. 1991) (determination in the context of a non-bankruptcy case that the plan sponsor should pay for administrative expenses).

**B. Proceedings "Related To" the Bankruptcy Case**

The Department argues, further, that the court lacks "related to" jurisdiction over the Proposed Order because it affects only the Plan, and has no affect on property of the estate.

Despite the Plan being a non-estate asset, the Trustee and the Bank assert that § 704(a)(11) of the Bankruptcy Code creates the Trustee's duties to administer the Plan, and, thus, at a minimum, the court should have subject matter jurisdiction over the Trustee's decisions affecting the Plan. In the Department's view, however, the Proposed Order governs the Trustee's functions as an ERISA fiduciary, and not his functions as the plan "sponsor" or, in the language of trust law, the "settlor." Considering that the Plan administrator's discretion to charge the Plan with administrative expenses is governed by ERISA, and that under the terms of the Proposed Order all of the Bank's fees would be paid from the Plan, instead of the estate, the Department concludes that the Trustee's duty under § 704(a)(11) is too tangential to make the Proposed Order related to the administration of the bankruptcy case. The court agrees.

In determining whether "related to" jurisdiction reaches the Proposed Order, the court will first discuss the Fourth Circuit's "related to" standard and discuss whether the Trustee's functions to be governed by the Proposed Order are fiduciary functions that can have any effect in the administration of the bankruptcy case.

8

### 1. "Conceivable Effects" and "Conceivable Bankruptcy Administration Purpose" Tests

Although a proceeding does not arise in a bankruptcy case or arise under title 11, the court retains subject matter jurisdiction over the proceeding as long as it relates to the bankruptcy case. 28 U.S.C. § 1334(b). To determine whether a proceeding relates to a bankruptcy case, the Fourth Circuit has adopted the "conceivable effects" test as articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). *See Valley Historic Ltd. P'ship*, 486 F.3d at 835. A proceeding relates to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id*. Furthermore, "[t]he proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*; *see also Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001, 1006 (Bankr. N.D. Ill. 1996) (holding that a dispute between non-debtors does not relate to the bankruptcy case where the dispute "does not involve property of the estate, does not affect the administration of the estate, and resolution of [the] dispute will not affect recovery of creditors").

Likewise, a proceeding that does affect the property of the bankruptcy estate, nevertheless, relates to the bankruptcy case as long as it has a conceivable bankruptcy administration purpose. *Id.* at 836. The essential inquiry is "whether there is a close nexus to the bankruptcy . . . proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.*

### 2. Scope of ERISA Fiduciary Obligations

Before addressing the merits of the Trustee's and the Bank's argument that § 704(a)(11) provides the court with subject matter jurisdiction to enter the Proposed Order, it is important to distinguish between actions of the Trustee as a settlor of the Plan and his actions taken as the Plan administrator.

Establishment of an employee benefits plan creates a trust, the assets of which must be held by a fiduciary. 29 U.S.C. § 1103(a). The term "fiduciary" is defined under 29 U.S.C. § 1002(21)(A)(iii) to include any person who, *inter alia*, "has any discretionary authority or discretionary responsibility in the administration of" a plan. Here, the Plan names the Debtor as the administrator of the Plan. Because the Plan's governing documents give the Debtor discretionary powers, the Debtor is a "fiduciary" under ERISA and the Trustee holds those same powers and

9

obligations pursuant to 11 U.S.C. § 704(a)(11).

As a fiduciary, the Trustee is bound by the "prudent man standard of care" as set forth at 29 U.S.C. § 1104(a):

> (1) Subject to sections . . . [29 U.S.C. §§ 1103(c), (d), 1342, 1344], a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>     (A) for the exclusive purpose of:
>         (i) providing benefits to participants and their beneficiaries; and
>         (ii) defraying reasonable expenses of administering the plan;
>     (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>     (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>     (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV. . . .

In contrast, the term "settlor function" is not defined under ERISA. Instead, case law has created the doctrine that settlor functions include those acts by plan sponsors that are not covered by ERISA fiduciary provisions. As the Supreme Court has stated, "plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999); *accord Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) (deciding to terminate a plan is a settlor function).

**3. The Proposed Order Concerns Only the Trustee's ERISA Fiduciary Duties and Serves No Bankruptcy Administration Purpose.**

The Trustee's decision to pay the costs of administration of the Plan from its assets implicates 29 U.S.C. § 1104(a)(1)(A) (the requirement to discharge duties for the purposes of providing benefits and defraying reasonable administration expenses); § 1103(c)(1) (prohibiting the assets of a plan from inuring to the benefit of the employer and limiting the use of the assets to providing benefits to participants); and § 1106(b) (prohibiting transactions between the plan and its fiduciaries). Indeed, such a decision may be entirely consistent with the Trustee's duties as plan administrator under ERISA. For example, the non-inurement rule under § 1103(c)(1) contains an exception allowing the fiduciary to use the trust fund to defray the "reasonable expenses of

10

administering the plan." Similarly, § 1108(b)(2) exempts "reasonable compensation" paid for "accounting, or other services necessary for the establishment or operation of the plan" from the § 1106(b) prohibition against insider transactions. Furthermore, the express terms of the Plan also allow the Trustee to hire agents to assist him with his duties as plan administrator, and the Plan allows the Trustee to pay the administration expenses from the Plan trust fund. Specifically, the Plan documents provide that:

> All expenses of administration may be paid out of the Trust Fund unless paid by the Employer. Such expenses shall include any expenses incident to the functioning of the Administrator, or any person or persons retained or appointed by any Named Fiduciary incident to the exercise of their duties under the Plan, including, but not limited to, fees of accountants, counsel, Investment Managers, agents (including nonfiduciary agents) appointed for the purpose of assisting the Administrator or Trustee in carrying out the instructions of Participants as to the directed investment of their accounts (if permitted) and other specialists and their agents, the costs of any bonds required pursuant to [ERISA] Section 412, and other costs of administering the Plan. *Until paid, the expenses shall constitute a liability of the Trust Fund.*

(Doc. No. 588, Ex. A ¶ 2.8) (emphasis added).

Thus, the Trustee may be allowed to pay certain fees and costs from the Plan as provided for by ERISA and the Plan itself. If a dispute arises over charges made against the Plan assets, however, the Proposed Order requires the court to apply ERISA in resolving the following questions: 1) whether the payment to the Bank is exempted under § 1108(b)(2) from the prohibition under § 1106 against insider transactions, 2) whether the reasonable expense exception from the non-inurement rule under § 1103(c)(1) applies to the payment, and 3) whether the fiduciaries in the case acted with general prudence under § 1104(a) in incurring the costs of termination. The resolution of the foregoing questions only affects the Trustee and the Plan.

Here, there is no real possibility that the Trustee's decision to charge the Plan with administrative costs will impact the bankruptcy estate. The Plan is not an estate asset. Additionally, the Proposed Order serves no bankruptcy administrative purpose. Its terms are designed primarily to resolve Plan-specific issues, and, as such, have no discernable impact upon the estate, the Debtor, or any of its pre-petition creditors.

It may be that when the Trustee acts as a Plan administrator, he acts as a bankruptcy trustee, because § 704(a)(11) created such a duty. A breach by a trustee of his bankruptcy duties can result

11

in personal liability, *Mosser v. Darrow*, 341 U.S. 267 (1951), but only if he acts outside his authority as a bankruptcy trustee. *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 819 F.2d 74, 76 (4th Cir. 1987). Where a bankruptcy "trustee acts pursuant to the explicit instructions of the bankruptcy court," he enjoys "complete immunity from suit." *Id.* Inasmuch as the Proposed Order is a method by which the Trustee seeks to obtain the imprimatur of the court regarding his decision made as Plan administrator, and thus immunity, it may appear to have a bankruptcy administrative purpose.

However, the limited purpose of providing the Trustee with a possible future defense of immunity does not provide a nexus sufficiently close to a bankruptcy proceeding upon which this court can rely for "related to" jurisdiction. For example, in *Torkelsen v. Maggio (In re The Guild and Gallery Plus, Inc.)*, 72 F.3d 1171 (3d Cir. 1996), the debtor held a painting in bailment pre-petition. When the bailor demanded that the bankruptcy trustee return the painting, the trustee could not locate the painting, and the bailor sued the trustee in his individual capacity. Undisputed in *Torkelsen* was the fact that the painting was never part of the bankruptcy estate. Nevertheless, the plaintiff argued that the suit against the trustee related to the bankruptcy case based on the defendant's status as the bankruptcy trustee. The Third Circuit rejected the plaintiff's argument, stating that "all claims filed in a bankruptcy court must be able to stand on their own as either core or related proceedings . . . . Surely not every suit against a trustee, regardless of how tenuous its connection to a bankruptcy estate, automatically confers jurisdiction simply because the trustee is named as a party . . . . Subject matter jurisdiction is not 'created by the fact that the trustee holds his office by court appointment.'" *Id.* at 1181 (quoting *In re McKinney*, 45 B.R. 790, 792 (Bankr. W.D. Ky. 1985)).

In this case, the basis for "related to" jurisdiction over the payment provisions of the Proposed Order cannot be its mere relationship to the bankruptcy Trustee; rather, there must be a closer connection to the underlying bankruptcy case. The thrust of the order relates to the Trustee's decision to charge the Plan with the Bank's fee. In that regard, the activity covered by the Proposed Order relates to non-estate assets for which the Trustee has personal, fiduciary duties created by ERISA. The estate and its creditors are not affected by the outcome of the Trustee's decision to pay the administrative costs from the Plan. The court can find nothing in the Proposed Order that relates to the underlying bankruptcy case beyond the coincidental identities of the Plan's administrator and

12

the bankruptcy estate's trustee, which the court finds is an insufficient nexus for asserting its authority over what fees and costs may be properly payable from the Plan.

## IV. CONCLUSION

The relief sought in the Proposed Order does not depend upon a resolution of bankruptcy law, and concerns activity that frequently exists outside the context of bankruptcy cases. Therefore, the order does not "arise under" title 11 or "arise in" the bankruptcy case. Moreover, because the Proposed Order governs the Trustee's ERISA fiduciary obligations to a non-estate trust, and the order could not impact the administration of the bankruptcy estate, the order does not "relate to" the bankruptcy case. Therefore, the court has no jurisdiction under 28 U.S.C. § 1334 to grant entry of the Proposed Order. Given that the court has concluded that it lacks the jurisdiction to enter the Proposed Order, the Department's additional objections to the order will not be addressed.

Pursuant to Federal Rule of Bankruptcy Procedure 9021, the court will enter a separate order consistent with this Memorandum Opinion.